## City of Louisville *vs.* R. F. Baird.

Case 31.

APPEAL FROM JEFFERSON CIRCUIT.

1. A convention was called by an ordinance of the city of Louisville, sanctioned by a vote of the people, to frame a charter for the better government of the city, members chosen, who framed a charter, which was adopted by the city. The ordinance held out no promise of compensation to the delegates, nor did it confer any power to vote themselves compensation, while it provided for compensation for clerks, printing, &c. Held by the court—that there existed no implied obligation upon the city to pay the delegates for their services. The maxim *expressio unius est exclusio ulterius.* The delegates must be presumed to have been actuated by patriotism alone in offering their services.

2. The citizens of every municipality owe public duties to the corporate bodies of which they are members, many of which are to be performed without compensation. Of this character were the duties devolving upon the members of the convention in this case.

Case stated.

This suit is brought by Robert F. Baird against the city of Louisville, to recover compensation for his services as a member of the convention which was held in said city in 1850 to form a charter for the government of said city. He alleges his services as delegate from the second ward of the city to be worth $216, and claims that sum.

It appears from the record in this case that in conformity with a desire expressed by a resolution of the city, through the mayor and council, passed in January, 1850, that the Legislature passed an act authorizing the mayor and council to take the sense of the city as to the propriety of calling a convention of delegates from the different wards of the city to frame a charter for said city, and submit the same to the

people of the city for their approval. In accordance <span>CITY LOUISVILLE<br>*vs.*<br>BAIRD.</span> with the act of the Legislature, the mayor and council, on the 27th of May, 1850, passed the following ordinance, to-wit: "An ordinance authorizing the holding a convention in the city of Louisville.

"§ 1. That for the purpose of carrying out the will of the citizens of Louisville, as expressed at the last municipal election, a convention be called to consist of four members from each ward, who are authorized to convene, agree upon, and propose a new charter for the government of the city of Louisville, or such alterations or amendments to the existing charter as they may deem proper; the same to be submitted to a vote of the citizens of Louisville for their adoption or rejection, at such time and under such regulations as the mayor and council may adopt.

"§ 2. *Be it further ordained*, that the election for members of said convention shall be held in each ward on the second Monday of July next, and at the several places where the late city elections were held, under the superintendence of two judges, a sheriff or marshal, and a clerk, to be appointed by the mayor, who shall each receive one dollar per day out of city treasury; and who shall take the same oath as judges are required to take when holding municipal elections. The polls to be opened at eight o'clock, A. M., and to close at six P. M.

"§ 3. *Be it further ordained*, that all free white male citizens of Louisville, entitled to vote for members of the Legislature, shall be entitled to vote for members of the convention, and under the same regulations and restrictions. And to entitle any citizen to a seat in said convention, he shall have the same qualifications as that of a councilman of said city.

"§ 4. *Be it further ordained*, that the judges of the several wards shall certify the poll books to the mayor and council, on or before the next regular meeting of the board after said election, who shall at said meeting designate the four persons from each

ward having the highest number of votes, and notify them of their election to said convention, and of the time and place of the meeting of the same.

"§ 5. *Be it further ordained*, that said convention shall meet in the court house in the city of Louisville, on the first Monday of September next, and shall have power to adjourn from time to time, and from place to place, till its duties are completed. It shall elect all of its officers and adopt such rules and regulations for its government as it may deem expedient. It shall have power to employ such clerks and other agents at such salaries, and have such printing and other work done as it may deem expedient and proper; and the president shall cause the expenses thereof to be audited and certified to the mayor and council, to be paid out of the city treasury.

"§ 6. *And be it further ordained*, that the mayor be and he is hereby directed to give an immediate notice of the time and place of the election, in such manner as he may deem expedient."

The elections being held, R. F. Baird, the appellee, was chosen a delegate from the second ward. The convention met, and a charter was formed for the adoption of the voters, which was submitted to a vote of the city and adopted. The appellee proved that he served seventy-two days in the convention, and that his services were worth three dollars per day, or as much as members of the Legislature. The charter contains about forty-five pages. The proof showed that the appellee was nominated for the convention, and afterwards canvassed for the office, and sought it as one of honor. The witness did not know whether he expected pay or not. The testimony proved the charter to be a good one. It was proved that a resolution had passed the convention asking pay for the services of the members before the adoption of the charter by the vote of the city. The charter is still the charter of city of Louisville.

The jury having found a verdict for the appellee for $216, the appellant moved for a new trial on the ground—1. That from the pleadings no verdict could be rendered for the plaintiff. 2. Because the court erred in giving and refusing instructions to the jury. 3. Because the verdict was against the evidence. Which motion was overruled and the defendant appealed to this court.

*Speed & Worthington,* for the appellant—

The plaintiff in his petition claimed of the city a compensation for services rendered at the request of the city of Louisville, as a member of a convention held for the purpose of forming a charter for said city, as a member elected from the second ward of the city. A demurrer was filed to the petition, but overruled by the court. The ruling of the court was excepted to.

1. The demurrer should have been sustained.

The petition sets out no sufficient legal consideration for the indebtedness. In setting out a parol contract, the consideration must be expressly stated, and that consideration should appear to be legally sufficient to support the promise. (1 *Chitty's Plead.* 293.) The philosophy of this rule of pleading is rather established than abrogated by the Code of Practice.

The petition does not state that the convention was called in obedience to, and by virtue of, the act of 1850. The court, however, judicially knows that it was so called; because without that act there was no authority in the council to have called and organized a convention. A municipal corporation, the city, could not charge the expense of such a convention upon the municipal fund, unless the authority to do so is deduced from that act. A municipal corporation is a subordinate government, or an auxilliary of the sovereignty of the State. The superior government gives to its creature—the municipality—a fund to be expended for municipal purposes. The

inferior cannot use that fund for the purpose of re-organizing the chartered rights and duties of a municipality, without the express consent of the superior. It follows, therefore, that if the city of Louisville, or the then authorities, had called and organized the convention without the express authority of the State, those who did work in or for the convention, could claim no compensation.

The convention was called and organized under the act of 1850, and it is claimed that the city is under an implied obligation to pay the members for their work. The appellee does not pretend that there was any express promise. He states the facts, and leaves the law to imply the promise.

Under the act of the Legislature, the city council had no authority to pay the members of that convention out of the municipal fund. Even an express promise to do so would not have been binding.

When the sovereignty of a State imposes a duty upon a city, or a subordinate and auxiliary department of the government, no obligation arises to pay for the performance of that duty, unless payment is provided for in the act imposing the duty. There are many duties imposed by government, and which will be enforced, if necessary, for which no pay can be claimed. The duty of serving on juries, to be overseers of roads, to muster in the militia, to serve in many other capacities, and perform other onerous and responsible duties, without compensation, have been enforced by our government. The sovereign power of the State may give the municipalities the power of imposing duties upon the citizens, and the power of enforcing the performance of those duties. In the case of the *City of London vs. Vanacre,* 5 *Modern Rep.* 438, the court sustained the power of the municipal corporation to compel a citizen to serve as sheriff. Such a power must exist in government some where. It is necessary to the very existence of government. In the arrangement of municipal governments, the execution of this power is not unfre-

quent. To have necessary and important duties performed by good men, a coercive power must sometimes be exercised. For instance: in the city of Louisville, where municipal and State elections frequently occur, a necessity has existed to make men serve as officers of the elections, under penalties; so, in cases of mobs, or where an officer of the law is resisted, citizens can be compelled to do duty. The principles of self-preservation, upon which the case of the *City of London vs. Vanacre* was decided, reaches the point: that those citizens who were elected to the convention could have been compelled to serve. The statute is imperative: "The delegates, when elected, shall meet and shall perform the duties for which they were elected." This imperative language is used without requiring or giving the corporation any power to pay the delegates.

It is the duty of the State to furnish municipal charters for the various and necessary subordinate communities. The State may amend and alter them at pleasure. (*Angel & Ames on Corporations*, 4 *edition, sec.* 31, *page* 26.) In order to have the charters passed, the State may select her means, and exert such power as is necessary to accomplish the end. As a means of performing that duty, and as a privilege to the citizens of Louisville, the State permitted them, through a convention of delegates, to present such charter as they would prefer. The city has no right, nor is it her duty to make a charter. The delegates discharged a duty imposed by the State. The city corporation was the mere organ of the State. The corporation of Louisville is no more liable for the services of the delegates, than a sheriff is liable to a juror or a witness whom he warns to appear in court in the name and by the authority of the commonwealth.

2. The petition does not show a request by the city. The convention was held by the permission of the State, and the service of the plaintiff, after his election, was at the command of the State. There

was no request on the part of the city. The plaintiff was not the servant nor in the employ of the city. (*See Denistan vs. Imperial Gass Co. 3 Barn. & Adolphus*, 125.) No obligation to pay arises upon such service rendered upon such request.

3. To educe an obligation to pay money for such service upon such a state of fact, would be to invest municipal corporations, or the officers of such corporations, with a most dangerous power. A municipal fund is created by taxation, direct or indirect. The power of taxation is a high one. The best restraint upon its abuse is to limit the necessity for a large fund; take away from municipal officers the power to use and spend money, and the desire to accumulate it by taxation will not exist; so the converse is true.

If municipal officers can charge the corporate fund by calling conventions, why may they not do so by calling primary assemblies? and so divide out the funds in the city coffers. This would be a novel agrarian rule.

4. The act authorizing the convention was in the alternative. The council could have proposed amendments without a convention. Suppose that course had been pursued, would the city have been bound to pay the councilmen for adopting such amendments? It is idle to say so; yet their claim for such work would have been as valid as that of any member of the convention. The duty of the councilmen to prepare amendments, had that course been adopted, was no greater than that of the convention of delegates.

5. There are offices of honor alone. This was one of them. No office can be honorable that is without responsibility. When a government creates an office, and specifices the duties without giving any emolument, it is an office of honor.

6. At common law, trustees received no compensation. The principle which gave then no pay, applies to such service as the appellee performed. The argument upon the demurrer covers the whole case, and

we deem it unnecessary to say anything on the other questions in the record.

*R. F. Baird,* per se—

The city authorities of Louisville, not willing to confide to the Legislature the business of framing a charter for its government, having assembled on the 28th January, 1850, resolved to ask of the Legislature the privilege of calling a convention to prepare a charter. The people, by a vote taken, approved of that course, and the Legislature gave the privilege, and directed its submission to the people after it should be prepared. (*Session Acts of* 1849–50, 13 *to* 15.)

It may be here remarked that the act of the Legislature was an act of supererogation. The city council might by ordinance have taken the sense of the people of Louisville on the propriety of calling a convention to frame a charter. They might have numbered the delegates and prescribed their qualifications. They might have regulated all their duties and submitted all their work to the votes of the people, and all this without the intervention of the Legislature. The action of the Legislature was only necessary to approve the work when done, and enact it in the form of law.

But the Legislature was requested to authorize the call of a convention, if sanctioned by a vote of the people. The method proposed was judicious, and well calculated to meet the approbation of the voters. The indorsement of the delegates by the vote of the people would inspire confidence. Their election from those who would be supposed to know the wishes of the people of the different wards gave assurance that the work would be done to public satisfaction.

It is insisted that the mayor and council, to whom the government and control of the prudential, municipal, and fiscal concerns of the city had been committed, and with whom it then existed, had the right to employ whom they pleased to frame a charter for

the city, and to pursue such method they might designate in the performance of that duty. They employed in their peculiar way four delegates from each ward of the city, to do the work of framing a charter; and although the employment was indirect, yet it was positive, and as effectual as if the city had possessed the physical faculty of a man, and had engaged the services of the delegates in person.

The delegates performed a work for the corporation of Louisville which resulted in benefit to the city, and the city accepted the work, and by so doing became impliedly bound to pay for it. (2 Kent's Com. 289; Bank U. S. vs. Patterson, 7 Cranch, 299.)

1. The city council directed the sense of the people to be taken, and used the Legislature as an instrument, though it was not necessary.

2. The city council ordered the election of delegates, and upon their election ordered them to do the work.

3. The city council ordered the city charter made by the convention to be laid before the people for their approval or rejection.

4. The sense of the people was taken as to the propriety of calling a convention, and resulted in favor of it. An election was held and delegates were elected. They prepared a charter. That charter was submitted to and approved by the people of the city, and the same became law by its adoption by the Legislature in 1851; and the city government has been conducted under its provisions since that time.

5. The acceptance by the city shows that it was beneficial to the city, and raises a promise to pay the delegates who framed it.

6. The evidence in the record shows that the appellee was elected, served in the convention, was an efficient member, that his services were worth three dollars per day, and that the charter is a good charter.

It is denied that the services rendered by the appellee in the convention are analagous to that of

serving on juries, overseeing or working roads, &c. Those services are of general interest to the public at large; but to repair the charter of a city, town, bank, university, or such like corporations, are not of general interest, but to the particular corporation only.

The charter of Louisville was for the benefit of the city alone, as much so as the framing of the charter of the Louisville bank to that particular corporation.

The record shows that the city once paid $500 to an individual for revising the laws and ordinances of the city. Though in form a donation, it was given in consideration of its value to the city, and the labor necessary to accomplish the work. It should be regarded as a precedent for the paying of members of the convention.

The act of the council in thus procuring a charter was wise, the services of the delegates was a valuable service to the city, and merits compensation.

Judge SIMPSON delivered the opinion of the Court—

By an act of the Legislature of 1850, (*see Session Acts*, 1849–50, 46–9,) the mayor and council of the city of Louisville were authorized to propose amendments to their city charter, or to call a convention of delegates from the various wards in the city to amend it or to make a new one. The act also contains a provision, that if a convention were called for that purpose the delegates when elected should meet at such time and place as the mayor and council should direct, and perform the duties for which they were elected.

The question of holding a convention for the purposes contemplated by this act of the Legislature, was submitted by the mayor and council to the voters of the city. The proposition to hold a convention was sustained by the votes of a majority; and to carry out the wishes of the citizens as thus expressed, an ordinance was passed by the mayor and council

*Margin:* CITY LOUISVILLE *vs.* BAIRD.

*Margin:* January 13.

prescribing the time and manner of the election of the delegates, the number of delegates to be elected in each ward, the time and place the convention was to convene, the mode of its organization, and the authority it should have to create liabilities upon the city.

Under this ordinance an election was held, and the appellee was elected in the second ward.  A convention met, of which he was a member, and continued in session until it had framed a new charter for. the city, which was subsequently. adopted by a vote of the citizens.  For his services as a delegate in this convention, an action was brought against the city by the appellee.  He recovered a judgment in the circuit court for the sum of $216, being three dollars a day for seventy-two days service, the time which, according to the testimony, the convention was in session.  From that judgment the city has appealed.

The only question to be determined is, whether, under these circumstances, an agreement on the part of the city to pay the delegates to the convention can be implied?

1. A convention was called by an ordinance of the city of Louisville, sanctioned by a vote of the people, to frame a charter for the better government of the city, members chosen, who framed a charter, which was adopted by the city. The ordinance held out no promise of compensation to the delegates, nor did it confer any power to vote themselves compensation, while it provided for compensation for clerks, printing, &c. Held by the court—that there existed no implied obligation upon the city to pay the

The mayor and council in passing the ordinance to hold a convention, were acting in their municipal capacity, and as officers of the city it was their duty to watch over and protect the interests of the corporation.  Had any intention existed to compensate the members of the convention for their services, this ordinance should, and in all probability would, have defined the length of time the convention should continue in session, and the amount of compensation the members should receive during its continuance.  The fact that the ordinance contains no provision on the subject affords of itself a strong presumption, that such an intention had no existence.

But the ordinance points out explicitly the extent of the power the convention should have to create debts against the city.  The power conferred for this purpose did not authorize the creation of a debt to compensate the members for their own services.  As

the matters which were to constitute a charge upon the city treasury were specially enumerated in the ordinance, all others must be regarded as excluded according to the legal maxim: *Expressio unius est exclusio ulterius.*

The ordinance as framed could not have justified an expectation that the delegates were to be paid for their services. They voluntarily sought the office with a knowledge that no provision was made for their compensation. They must be presumed to have been willing to appropriate a portion of their time and talents to the promotion of the common good from motives of patriotism alone. There was no reasonable grounds for a belief on either side that the services rendered were not to be gratuitous. The citizens of every local municipality owe public duties to the corporate body of which they are members. Many of these duties have to be performed without compensation. Of this character were the duties which devolved upon this convention. The delegates were selected with reference to their qualifications for the station, and their willingness to accept of it, upon the terms proposed by the ordinance passed by the mayor and council. It was a station of honor and public confidence, in which the services rendered carried with them their own reward, in the general advancement and promotion of the public welfare.

No promise can be implied on the part of the city, under these circumstances, to pay the members of the convention, but if paid at all for their services, the payment will be entirely gratuitous.

Wherefore, the judgment is reversed and cause remanded, with directions to sustain the demurrer to the plaintiff's petition, and render a judgment for the defendant.

CITY LOUISVILLE.
*vs.*
BAIRD.

delegates for their services. The maxim *expressio unius est exclusio ulterius.* The delegates must be presumed to have been actuated by patriotism alone in offering their services.

2. The citizens of every municipality owe public duties to the corporate bodies of which they are members, many of which are to be performed without compensation. Of this character were the duties devolving upon the members of the convention in this case.